Good morning, your honors. Before we begin, I would like to ask for permission to split argument time with my co-counsel, Haley Upshaw, who represented Mr. Rodriguez before the agency. Ms. Upshaw would like to use four minutes of argument time to address Mr. Rodriguez's Convention Against Torture claim. All right. And watch your clock. Well, thank you. May I please the court. My name is Kristen Jackson, and I am pro bono counsel of record for Petitioner Brian Rodriguez. And Mr. Rodriguez is viewing the argument today. Mr. Rodriguez's case presents a unique window into the challenges facing young people in immigration court. Because this court has yet to recognize a right to government appointed counsel for children and their removal proceedings, petitions like Mr. Rodriguez's, and like the petition of DGGL, whose argument follows this one, are relatively rare. But the problems that they portray, as amici explain, are not. This court should grant Mr. Rodriguez's petition in a narrow but essential opinion that will provide clarity to all people who are the United States' children. During the time that I have, I'd like to address two primary areas. The first are the Flores-Chavez violations, addressing both Mr. Rodriguez's argument for revamped to consider a termination theory, and also his jurisdictional claims. Second, I will address Mr. Rodriguez's challenge to the agency's alienage finding, both the problems with the birth certificate and the pre-sentence report, and also their hasty admission. That DHS, the Department of Homeland Security, failed to serve Mr. Rodriguez's in compliance with Flores-Chavez entitles him to relief. At a minimum, this court should remand Mr. Rodriguez's case back to the agency to consider the claim for termination because of an egregious violation of an agency regulation, as it should have in the first instance. The second issue is the following regulations regarding service, rooted in Madero-Garcia-Flores and underscored in Sanchez v. Sessions. The regulation at issue here is current 8 CFR 236.3, which in Flores-Chavez, the court interpreted to require that when DHS releases a child into the child's care, DHS must serve that child's notice to appear on that adult if the child is under 18. The agency ignoring this critical argument is reversible error. Now, of course, the court won't disregard this argument, but it need not engage with its substance. Instead, the solution under the agency to consider. Now, of course, this return to the agency will be against the backdrop of the harm that Mr. Rodriguez suffered as a result of DHS's noncompliance with this important regulation. Mr. Rodriguez entered removal proceedings when he was only 16 years old, and at that time, he appeared eligible for special immigrant juvenile status and for asylum. But DHS never served the notice to appear on his mother, and it could have served as a tool to help him navigate the proceedings and to secure counsel. And had that occurred, Mr. Rodriguez may very well be a lawful permanent resident or even a U.S. citizen today, rather than having been issued two separate removal orders during the course of this proceedings. Counsel, correct me if I'm wrong. Wasn't the second service made by the NTA after the petitioner was 18 years old? That's right, Your Honor. Once my co-counsel, Ms. Upshaw, took over representation of Mr. Rodriguez, then eventually after she objected to improper NTA service, the government served Ms. Upshaw with his notice to appear after he was 18. Does that cure whatever the answer was in not serving his mother? We don't believe so, Your Honor, because under Forrest Chavez, under Forrest Chavez, the regulation that's designed to protect the interests of children in removal proceedings, it's very... What interest was present when he was served improperly, let's agree with that, when he was 16, that was not vindicated when he was served properly? Yes, Your Honor. So at the time that he was served properly, he did then, seven years later, receive the charges that were being placed against him and information regarding counsel. But what he did lose out on, Your Honor, is the time-limited relief that's available to children in removal proceedings. Can I ask a question about that, Ms. Jackson? Yes, Chief Judge. How do you respond to the argument that you can't use the SIJ classification to get an immigration benefit? And if there is no loss of that opportunity, where is your prejudice? Well, Your Honor, I think for a special immigrant juvenile status, a child can't go into juvenile court with the sole intent of getting an immigration benefit. Primarily, I think, is the word. That's correct, Your Honor. It's not solely, primarily. Primarily. But in this case, Mr. Rodriguez was already in the ward of a juvenile court at the time that he was placed into proceedings. And the record does make clear that he was under the jurisdiction of the juvenile court. And so Mr. Rodriguez's case would be very unlike a case where someone was primarily seeking juvenile court protection for immigration purposes. In fact, his being under juvenile court jurisdiction was unrelated to any immigration issues. If I might turn to Mr. Rodriguez's jurisdictional argument related to Flores-Chavez. The agency here correctly found that DHS had not complied with Flores-Chavez's service requirement. And also that the lack of proper service meant that the agency was not able to exercise jurisdiction over Mr. Rodriguez's case. But allowing a cure for this defect was error. Because unlike service under other notice provisions, service under Flores-Chavez has a temporal limitation that is not subject to delay. That the Flores-Chavez court did not so hold is not determinative. Because Mr. Flores-Chavez himself did not make that argument before this court. And our pending motion for judicial notice makes that claim. And so in sum, DHS's failure to properly serve Mr. Rodriguez's notice to appear entitles him to leave. Are you going to discuss the evidence of alienage in this case? Yes, Your Honor. I was just about to move to that topic if that's acceptable. Yes, so Mr. Rodriguez also challenges the agency's finding that DHS establishes alienage by clear, unequivocal, and convincing evidence. The court can address Mr. Rodriguez's alienage challenge through a simple application of its precedents. Which all point toward granting his petition here. First, this court's decision in Perez-Cruz, which postdates the agency's decision here, makes plain that the birth certificate did not arise from identity evidence alone. Identity evidence may include a name and date of birth, but it certainly does not include birthplace. Second, a line of cases from Iran to Espinosa to Olino make plain that the government has the duty to authenticate documents that it intends to use in removal proceedings. And it failed to do so here. Finally, this court's decision in Schlatt makes clear that it sets out the procedures and standards for admitting and allowing the dissemination of pre-sentence reports to third parties. And here, DHS's utter failure to follow Schlatt's mandates means that its admission was fundamentally unfair. And so, unless the court has any other questions, I'd like to turn argument over to Ms. Upshaw to address Mr. Rodriguez's convention against torture court. All right. Thank you. Ms. Upshaw. Good morning, and may it please the court. My name is Haley Upshaw, and I also represent the petitioner, Brian Rodriguez. As my co-counsel, Ms. Jackson, has described, the court must remand the agency with instructions to either dismiss the petition, dismiss Mr. Rodriguez's removal proceedings, or to conduct the proper legal inquiry into his motions to terminate. If the court opts for the latter, it must also address his claims related to his application under the convention against torture. Mr. Rodriguez faces individualized and unique risks of torture if removed to Mexico. He faces torture at the hands of cartel members because of his and his sister's cooperation in law enforcement investigations relating to individuals affiliated with two extremely violent Mexican cartels. He also faces torture from Mexican law enforcement and gangs who will presume him to be a gang member, as well as from his maternal uncle based on an ongoing land dispute over which his father was killed over two decades ago. In its initial consideration of Mr. Rodriguez's CAD application, the agency made significant legal errors that must be corrected on remand. First, the agency ignored this court's holding in Maldonado v. Lynch and imposed a legal burden on Mr. Rodriguez regarding the impossibility of internal relocation within Mexico. Second, the agency analyzed each source of torture that Mr. Rodriguez faces in Mexico separately, but failed to consider the aggregate risk or combined risk from all of these sources of torture together. This is clear legal error as this court's held in Quijada Aguilar and Cole. The combined risk of torture from multiple sources may meet the standard for CAD, even where the same source is considered individually does not meet the standard. Third, the agency based its analysis of the threat to Mr. Rodriguez on the facts at the time of his hearing, but ignored highly probative evidence that would increase his risk of future torture, namely the scheduled release from prison of his cartel-involved cousin, where his cousin had made specific threats to him in retaliation for his sister's cooperation in the cousin's prosecution. The agency also erred in focusing on the irrelevant fact that Mr. Rodriguez's tattoos are not in fact gang-related, where he argued that he would be targeted by law enforcement and gangs in Mexico because they would be suspected to be gang-related, and substantially erred in finding that the country conditions evidence did not show government acquiescence in torture committed by law enforcement officials and by cartel members. So in sum, we respectfully request that the court grant Mr. Rodriguez's petition for review based on the agency's errors as outlined by Ms. Jackson and his errors regarding CAD. And if the court has questions, I'm happy to address them. Otherwise, we can reserve the remaining time for rebuttal. All right. Thank you, counsel. Judge Baird, do you have a question? No. Okay. Ms. Bowen? Yes. May it please the court. Jennifer Bowen on behalf of the respondent and the U.S. Attorney General. As argued in respondent's brief, the petition for review is subject to denial. First, with respect to the petitioner's first motion to terminate, the record reflects that service was made on petitioner's counsel. It was perfected, and the immigration judge did not err in finding that service could be perfected. Petitioner here is asking the court to hold for the very first time that service cannot be perfected. They concede that the court has never held this, and they concede that Flores Chavez didn't hold this. And respondent would ask that the court not make that holding for the first instance here. So what happens if, you know, the role in Flores Chavez is pretty clear. And in Flores Chavez, the prejudice was pretty clear, too, because the minor had been removed in absentia. Because when he was released, you know, I mean, yes, he had a piece of paper that he had to show up, but he didn't share that with his parents. He lived, you know, 400 miles away from San Diego and couldn't possibly have made the hearing on his own. So there is clear prejudice in Flores Chavez. But if the role is going to have any need, can we really say that it's okay not to serve a minor's parents, or even the juvenile court, say they're exercising their paternal role over the minor, and then simply sit back and wait until the kid turns 18 and serve him again, and that's okay? Well, Your Honor, this wasn't a case where the DHS simply sat back and waited. Once DHS was alerted to the fact that service had not been made, service was shortly then perfected. And this isn't a case along the lines of Flores Chavez where a juvenile was ordered removed in absentia. Here, there is an in absentia order, but that's completely unrelated to service. It has to do with... I'm sorry, Gamsa, what do you mean there's an in absentia order? It's not... The in absentia order was made while Petitioner was serving time in federal custody for his drug charge, for his methamphetamine charge. It's not related to service, and it's not challenged here. I didn't mean to confuse the court by mentioning that the in absentia order isn't related to the issues of service. I was just simply acknowledging there was an order. Between the NTA that was just served on him when he was a minor... Yes, Your Honor. And the time when it was again served when he was over the age of 18. What were the proceedings that happened that affected his rights? Your Honor, it appears that he had a number of hearings. I believe he had at least three hearings that he appeared for before an immigration judge after he was placed into removal proceedings in 2010, between 2010 and 2013. It appears that he appeared for each of those hearings. Unfortunately, the record does not include a transcript of those hearings, so we do not know what occurred at those hearings. He was then arrested and detained on federal... Let me ask you while we're on those hearings. Yes, Your Honor. So that was a three-year period where he appeared. Did he have a parent with him? Did he have a lawyer with him? It appears that he was not represented during those hearings, as he reflects in his declaration that he was given continuances to seek counsel. It does not appear that any pleadings were taken, and no final orders of removal were issued during those times when he appeared. Okay. What about the prejudice from just the aging, that he became 18 and became ineligible for certain favorable relief? Well, the prejudice here is fairly speculative. It's assuming that he would have been eligible at that time, which we can't know what would have happened. We certainly know that he isn't eligible now following his federal drug conviction for asylum, and he is no longer eligible for any juvenile relief either. Whether or not that would have occurred is, again, it's speculative. Does the record reflect any basis for juvenile relief based on abuse or neglect or abandonment? Your Honor, I'm not aware of. I understand that he was a subject of the court based on, I believe, some criminal activity when he was a juvenile. But whether or not he would have had a claim to relief, I do not know. So I'm just trying to explore with you the outer bounds of Flores Chavez. Yes, Your Honor. What is prejudice short of removal and absentia? Or is it a per se rule that prejudice is presumed if you're a juvenile and notice has been served on you but not a parent or a guardian? Is it presumed that it's prejudicial because you are not able to take advantage of whatever relief might be available, speculative in hindsight or not, but you're not being able to assert your rights? Yes, Your Honor, but this isn't that case where we're not asking the court to issue a bright line rule or to recognize that there's no instance in which there can be prejudice. It's rather looking at the case here that there is no sufficient showing of prejudice and that the court has never held that when service has not been properly made, that it cannot then be perfected. This isn't a case where pleadings were taken prior to proper service. This isn't a case where a final order of removal was issued prior to proper service. All the pleadings and the final order of removal were issued after service was perfected. So what case do you have in the immigration context that allows service to be perfected? Suppose the NTA hadn't been served at all. Yes, Your Honor, suppose it had not been put in proceedings. If the NTA had never been served, I don't know what would have occurred in that instance, because would he have appeared for the proceedings? As I understand this case, the only reason he was there in proceedings was because he was otherwise in custody with the juvenile. No, Your Honor, he appeared for several hearings after he was released from ORRA custody. He was released from ORRA custody on March 8th of 2011. He then appeared for a hearing on October 19th, 2011, July 3rd, 2012, and February 20th, 2013, before he was arrested and detained on federal criminal drug charges. So he appeared for three hearings after he was released from ORRA custody. Okay, and by himself, as far as we know. Your Honor, I do not know whether he appeared by himself or with his mother, because again, unfortunately, the record does not include those transcripts. It does include his declaration asserting that he was granted a continuance to seek counsel. So there's no indication that he was represented by counsel in those hearings. Okay. Could you address the basis of the government's alienage proof? Yes, Your Honor. As we argue in our brief, the immigration judge and the board in affirming the immigration judge properly found that identity is not suppressible. And this is not a case where identity, the petitioner's argument fails to acknowledge his federal drug conviction in arguing that the knowledge of petitioner's identity must have come from improper access to his juvenile records. So where did the birthplace come from? The birthplace. Your Honor. Where would it be? I'm not sure right now where the birthplace came from, but it does not mean that it came from the improper access to juvenile records in finding it. I need to, sorry, my computer's gone off for me to look at the pre-sentence report. Isn't in fact the record is silent as to how DHS obtained the sealed PSR, which contained the birthplace? Your Honor, that would require a finding that this federal record was not properly relied upon by the immigration court. And it is a federal record that gets all. How did the DHS obtain the sealed court record? It was not sealed when it was admitted into immigration court. It was sealed subsequent to its admission, I believe. I don't understand. Where in the record do we find that? The pre-sentence report? No, where in the record do we find what the source of the alienage proof was? Is there any evidence of it? I'm afraid I don't. So you're asking for a site to the record for DHS's evidence of alienage? Yes. It is at... Sorry, Your Honor. And specifically, if it is only in the PSR, that is the birthplace to get the birth certificate, where is the evidence that the PSR was properly obtained by DHS? Well, Your Honor, we argue that because it's a federal record, it could be relied upon by the immigration court, that it's self-authenticating as a federal document here. This isn't a private individual seeking to use the pre-sentence report. This is the federal government using a pre-sentence report. But doesn't the government have to demonstrate that it obtained the PSR from a source independent of the taint in this case? Yes, Your Honor, but there's no indication that they would not have obtained the pre-sentence report by the fact that he was charged and convicted in federal court. The methamphetamine charge that he sustained. So do we just take judicial notice of the fact that he had this conviction, which would have led the DHS to the PSR, which would have led to the birth certificate? Yes, Your Honor, I mean it's part of the record in reopening his case and acknowledging that the in absentia order was only issued because he was in federal custody at the time and therefore it had to be reopened. And that he was in federal custody at the time because he sustained these federal charges. And he concedes that because of the federal charges, he was not eligible to seek asylum or withholding of removal and his only claim, assuming the charges, the removal proceedings were not terminated, would be deferral under CAT. Did you want to briefly, if there are no other questions on this, to the question of the proof of a threat of future harm? Yes, Your Honor, as we argue in our brief, the record does not compel the reversal of the agency's denial of deferral under CAT. Rather, the agency addressed each of Petitioner's claims related to his uncle, related to his cousin, related to his tattoos, and related to his assertion that a drug cartel against whom he had provided federal evidence would seek him and found that it was all too speculative. Therefore, it was considered, all of it was considered in total and found to be too speculative for him to sustain his high burden to show a probability of torture by or with the acquiescence of a government official. I see that my time is ending. If there are no further questions from the court, respondent will rest on his brief. All right. Thank you, counsel. Is there a rebuttal from Ms. Jackson and Ms. Sepshaw? Yes, Your Honor, I will conduct a rebuttal. So I'd like to make a few points on the Notice and Flores-Chavez arguments. As to the court's question regarding the facts related to Special Immigrant Juvenile Status, I would point the court to our opening brief at page 23, and also to the record at page 418 where Mr. Rodriguez has submitted a declaration. I will note that the evidence here on this record is very similar to the evidence that was found to show a prima facie eligibility for SIJS in the CJLG case, which is also cited on that page of our brief. Secondly, as to the in absentia order, it is true that this is not on review here, but notice is highly significant there. Your Honors, it was plain on the face of this alien file that service with Flores-Chavez had not been complied with, and yet the government moved forward and sought and obtained an in absentia order against Mr. Rodriguez. So notice is not irrelevant to the in absentia claim. I would also point out that it is true that Mr. Rodriguez did appear for some hearings. He was on his own. He did not have counsel. His mother did not appear, but the fact that he got hearing notices does not mean that he received all of the information that is properly contained within a notice to appear and that should have been given to his mother, not to him. I would like to make a few points regarding the alienage question. I think it is very telling that when the court asked the question of where did the birthplace information come from, there was not already an answer. And there must be an answer, but it is not anywhere on the face of the record. And it was the government's burden to show that this evidence was obtained free from the taint of the I-213s. And government has simply failed to do so here. So we would respectfully ask that the court grant Mr. Rodriguez's petition. Thank you. All right. Thank you very much, counsel. Rodriguez v. Wilkinson will be submitted.
judges: Wardlaw, Bea, Rosenthal